IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| CASANDRA WILLIAMS-EVANS, | * | |
| Plaintiff, | * | |
| v. | * | CV 118-148 |
| ADVANCE AUTO PARTS, INC., | * | |
| Defendant. | * | |

O R D E R

Before the Court are the Parties' motions for summary judgment. *Pro se* Plaintiff Casandra Williams-Evans moves for summary judgment on her two claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. (Doc. 28). Defendant Advance Auto Parts, Inc. moves for summary judgment on both of Plaintiff's claims. (Doc. 53.) The Clerk has given each party notice of the opposing summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and the consequences of default. Thus, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been met. The Parties have fully briefed the motions and submitted materials pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, making the motions ripe for decision. For the following reasons, Plaintiff's motion is denied, and Defendant's motion is granted.

## I. BACKGROUND

Plaintiff was a part-time employee at Defendant's store on Deans Bridge Road in Augusta, Georgia. (See Pl.'s Dep., Doc. 53-2, at 32-33.) Plaintiff worked as a salesperson, with duties including stocking shelves, finding products for customers, installing car batteries and windshield wipers, cleaning the store, and ringing up customers. (See id. at 46-53.) These duties required Plaintiff to be able to walk, stand, and lift objects weighing up to fifty pounds. (See id. at 61-62.) Plaintiff's job required her to be able to work assorted days, evenings, and weekends on an as needed basis. (See Job Description, Doc. 53-3, at 19-20.) Failure to meet these attendance requirements can result in termination under Defendant's attendance policy. (See Doc. 53-8, at 1-2.)

On June 19, 2014, Plaintiff sustained a lower back injury while lifting a car battery. (See Pl.'s Dep., at 65.) Plaintiff was out of work from June 20 to July 9, 2014, but frequently missed work upon her return due to back pain. (See id. at 73-74; 105-06; Emerson Decl., Doc. 54-10, ¶ 8.) When at work, some of Plaintiff's job duties were excused to help manage her pain. (See Pl.'s Dep., at 92.) Defendant also provided seating for Plaintiff while at work - either a folding chair or an office chair with a cushion - although Plaintiff requested a stool with back support. (See id. at 124-25; 160.) At one point, Plaintiff was completely

2

absent for six of her scheduled shifts within a period of less than two months. (See Ex. to Pl.'s Dep., Doc. 53-5, at 22.) Plaintiff was not disciplined for her frequent absences. (See Pl.'s Dep., at 77-78; 105-06.) Although Plaintiff's scheduled hours increased (by one hour), her actual time worked did not because she frequently left early or arrived late. (See Ex. to Pl.'s Dep., at 22.)

Plaintiff has been unable to work for Defendant since November 3, 2014 until at least her deposition in June of 2019. (See Pl.'s Dep., at 155-56). Defendant has not terminated Plaintiff even though she has not worked since 2014, and Plaintiff remains on workers' compensation leave. (See id. at 157-59.)

Plaintiff applied for Social Security Disability Income ("SSDI") in 2012. Her SSDI application states, "I know that I am unable to work 40 hours a week," and "[n]ow able to work: No." (SSDI R., Doc. 53-9, at 6.) She also testified at her 2016 hearing before an Administrative Law Judge that her disability began in October of 2012. (See id. at 14.) Plaintiff was awarded SSDI in 2016, and the Administrative Law Judge presiding over her claim ruled that Plaintiff had been disabled since October of 2012 and unable to engage in any substantial gainful activity. (See Pl.'s Dep., at 165-66; 168-69; SSDI R. at 15.)

Prior to initiating this lawsuit, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). (EEOC

3

Charge, Doc. 53-5, at 32.) The charge asserted that Defendant violated the ADA by discriminating against Plaintiff on the basis of disability and through retaliation. (See id.) In particular, the charge states, "Following my injury on June 19, 2014 I requested to use a stool as a reasonable accommodation to my disability. Larry Woods, Area Manager, said he would not provide me with a stool. My hours were increased following my injury and accommodation requested." The EEOC issued Plaintiff a right-to-sue letter on August 24, 2018. (Doc. 7, at 12.)

## II. JURISDICTION AND VENUE

Because this case arises under the ADA, 42 U.S.C. § 12101 et seq., this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the claim took place in Augusta, Georgia, which is within the Southern District of Georgia.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving

4

party has produced evidence such that a reasonable factfinder could return a verdict in its favor." <u>Waddell v. Valley Forge Dental Assocs., Inc.</u>, 276 F.3d 1275, 1279 (11th Cir. 2001). The Court must view factual disputes in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-moving party's] favor." <u>United States v. Four Parcels of Real Prop.</u>, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court should not weigh the evidence or determine credibility. <u>Anderson</u>, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials in the record, the basis for the motion. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Because the standard for summary judgment mirrors that of a directed verdict, the initial burden of proof required by either party depends on who carries the burden of proof at trial. <u>Id.</u> at 322-23. When the movant does not bear the burden of proof at trial, it may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 606-08 (11th Cir. 1991) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970); <u>Celotex Corp.</u>, 477 U.S. 317). The movant cannot satisfy its initial burden

by merely declaring that the non-moving party cannot meet its burden at trial. Id. at 608.

If — and only if — the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993). On the other hand, if the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116–17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033–34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56. In reaching its conclusions herein, the

Court has evaluated the Parties' briefs, other submissions, and the evidentiary record in this case.

## IV. DISCUSSION

Plaintiff asserts two counts in her complaint: one for discrimination on the basis of disability and one for retaliation, both in violation of the ADA.

A. Discrimination Claims

Plaintiff claims that Defendant discriminated against her in violation of the ADA. To establish a prima facie discrimination case under the ADA, Plaintiff must show: "(1) [s]he is disabled; (2) [s]he was a 'qualified individual' at the relevant time, meaning [s]he could perform the essential functions of the job in question with or without reasonable accommodations; and (3) [s]he was discriminated against because of [her] disability." Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001). Defendant makes four arguments for why Plaintiff cannot make out a prima facie case for discrimination, but the Court need only address one.

Defendant argues that because of assertions made in her SSDI proceeding and ultimate award of benefits, Plaintiff is estopped from arguing that she is a "qualified individual" who could perform the essential functions of her position. See 42 U.S.C. § 12111(8) (defining "qualified individual" and stating that an employer's

7

description of a job shall be considered evidence of the job's essential functions). This argument is based on a case from this district:[1] Adigun v. Express Scripts, Inc., No. 2:16-CV-39, 2017 WL 5618284, at *3 (S.D. Ga. Nov. 21, 2017) aff'd 742 F. App'x 474 (11th Cir. 2018). In that case, the court found that Plaintiff was estopped from arguing that she was able to work because of the unexplained inconsistency of that argument with her representations to the Social Security Administration.

"[I]f an individual cannot perform the essential functions of the job, even with a reasonable accommodation, then she is not qualified [under the ADA]." Adigun, 2017 WL 5618284, at *3. A plaintiff suing under the ADA must be able to adequately explain why her claim for disability before the Social Security Administration is consistent with her ADA claim that she could perform the essential functions of her job. See id. (citing Siudock v. Volusia Cty. Sch. Bd., 568 F. App'x 659, 662-63 (11th Cir. 2014)); see also Cleveland, 526 U.S. at 798. This is because the ADA only protects disabled individuals who are still able to perform the essential functions of the job, albeit with reasonable accommodation - "a plaintiff who is totally disabled and unable to

---

[1] The United States Supreme Court also considered the issue in Cleveland v. Policy Mgmt. Sys., 526 U.S. 795, 798 (1999), discussed below.

work at all is precluded from suing." Slomcenscki v. Citibank N.A., 432 F.3d 1271, 1280 (11th Cir. 2005).

Here, Plaintiff's complaint asserts that she was able to perform the essential functions of her job with or without accommodation. (See Am. Compl., Doc. 7, at ¶ 46.) Plaintiff's sworn SSDI application states that she had been unable to work, was currently unable to work, and that her condition is expected to last at least 12 months. (See SSDI R. at 4-6.) Thus, unless Plaintiff can reconcile her two positions regarding her ability to work, summary judgment is appropriate. See Siudock, 568 F. App'x at 662-63 (citing Cleveland, 526 U.S. at 798 ("To survive a defendant's motion for summary judgment, [plaintiff] must explain why that SSDI contention is consistent with her ADA claim that she could 'perform the essential functions' of her previous job, at least with 'reasonable accommodation.'")). "[T]hat explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of . . . the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" Cleveland, 526 U.S. at 807.

Plaintiff responds by distinguishing between the definition of disability in the ADA context and the SSDI context, noting that an award of SSDI is not incompatible with a successful ADA claim. There is a meaningful distinction between the two schemes – for

9

example, the ADA asks whether the plaintiff could complete the essential functions of a particular job *with reasonable accommodation*, while Social Security asks whether the claimant is so severely disabled that she could not engage in *any* kind of work. See id. at 803 ("[A]n ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it." (emphasis original)).

The Eleventh Circuit has held that when a plaintiff successfully maintains that she is unable to do her "past relevant work" as of the date of termination, the plaintiff is estopped from asserting that she was able to perform the essential functions of her job at the time of termination. See Kurzweg v. SCP Distribs., LLC, 424 F. App'x 840, 844 (11th Cir. 2011). Although she points out the potential consistency of her SSDI and ADA claims, Plaintiff does not attempt to reconcile the two; her discussion summarizes Cleveland, touching on examples of what a plaintiff would have to show to explain away the contradiction. Missing from Plaintiff's analysis is any application of the law to her own facts.

Although the Court must construe Plaintiff's filings liberally,[2] the facts in Plaintiff's SSDI record are not compatible

---

[2] See Haines v. Kerner, 404 U.S. 519, 520 (1972).

with her assertions in this case. Like in <u>Kurzweg</u>, Plaintiff stated in her SSDI application that she was unable to work long before she even started working for Defendant. (<u>See</u> SSDI R. at 8); <u>see also</u> <u>Slomcenski</u>, 432 F.3d at 1280 (noting that plaintiffs in other cases who stated they were "unable to work" in a SSDI proceeding are foreclosed from qualified individual status). She also testified at her SSDI hearing that she was unable to lift more than about five or six pounds, and "must lie down about 30 minutes every hour."[3] (SSDI R. at 14.) These statements are entirely inconsistent with Plaintiff's allegations that, even with her requested accommodation of a stool with back support, she could perform the essential functions of her job, such as installing car batteries, cleaning the store, and manning the cash register, all while "predominantly walking or standing." (<u>See</u> Pl.'s Dep., at 53-54; 61-62.) Plaintiff's failure to explain the inconsistency between her current claims with those she made in her SSDI proceeding estop her from asserting that she is a qualified

---

[3] Plaintiff also testified that

> she is able to stand about 20-25 minutes and sit about 20-25 minutes before changing position and is able t[o] lift about 5-6 pounds. She is able to kneel and squat, but not able to crawl, and must lie down about 30 minutes every hour. She stated she must alternate sitting and standing and must use [the] restroom 1-2 times per hour. She testified she experiences problems with vertigo and has dizzy spells.

(SSDI R. at 14.)

individual. Therefore, she cannot make out a prima facie case of discrimination under the ADA. This makes summary judgment on Plaintiff's ADA discrimination claims appropriate.

B. Retaliation Claims

Plaintiff also asserts retaliation claims stemming from her request for an accommodation and filing of an EEOC charge. She alleges that Defendant retaliated against her for those actions by: "forcing her on workers['] compensation leave, continually denying her request for a stool with back support as a reasonable accommodation, increased [sic] her scheduled work hours, threatening to terminate her, and overall creating a retaliatory hostile work environment." (Am. Compl. ¶ 62.) Defendant contends that Plaintiff failed to exhaust her administrative remedies as to three of the allegedly retaliatory actions, and regardless, Plaintiff cannot make out a prima facie case for retaliation.

1. Exhaustion of Administrative Remedies

"The starting point for determining the permissible scope of a judicial complaint is the administrative charge and investigation." Griffin v. Carlin, 755 F.2d 1516, 1522 (11th Cir. 1985). "A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Mulhall v. Advance Sec., Inc., 19 F.3d 586, 590 n.8 (11th Cir. 1994). "[The Eleventh Circuit] has noted that judicial claims are allowed if they

12

amplify, clarify, or more clearly focus the allegations in the EEOC complaint, but has cautioned that allegations of new acts of discrimination are inappropriate." Gregory v. Ga. Dep't. of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004) (quotation omitted). Additionally, "the scope of an EEOC complaint should not be strictly interpreted." Id. (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 465 (5th Cir. 1970)). Defendant argues that Plaintiff's allegations of forced workers' compensation leave, threats of termination, and hostile work environment all fall outside the scope of her EEOC charge. The proper inquiry is whether Plaintiff's complaint was "like or related to, or grew out of, the allegations contained in her EEOC charge." Id.

Defendant seeks to limit Plaintiff to only the instances of retaliation in her EEOC charge, which is not how courts interpret these types of complaints. It is not immediately clear that Plaintiff's allegations set out facts beyond the scope of an investigation related to her EEOC charge.[4] The charge states that Plaintiff was retaliated against because of her request for reasonable accommodation and that her scheduled hours were increased following the request. It would be expected that when the EEOC investigates Plaintiff's charge of retaliation, it would examine how the retaliation manifested itself. That investigation

---

[4] The substantive contents of the EEOC charge are given in the Background section, *supra*.

may or may not reach all five of alleged incidences of retaliation. The Court considers the merits of all of Plaintiff's retaliation claims below and finds that they fail to make out a prima facie case. Therefore, the Court need not determine whether Plaintiff exhausted her administrative remedies with respect to all five retaliation events.

2. Prima Facie Case

Defendant also argues that all of Plaintiff's retaliation claims fail to make out a prima facie case. "To avoid summary judgment on a retaliation claim, a plaintiff must show (1) statutorily protected expression; (2) a materially adverse action; and (3) a causal link between the protected expression and the adverse action."[5] Garrison v. City of Tallahassee, 664 F. App'x 823, 827 (11th Cir. 2016) (citing Stewart v. Happy Herman's Cheshire Bridge, 117 F.3d 1278, 1287 (11th Cir. 1997)). Defendant addresses each of the allegedly retaliatory actions with a focus on the second element.

First, Defendant argues that the increase in Plaintiff's scheduled hours was not a materially adverse action. An action is "materially adverse" only if it "might dissuade a reasonable worker from making or supporting a charge of discrimination." Garrison,

---

[5] This is the same standard applied to Title VII cases. Stewart v. Happy Herman's Cheshire Bridge, 117 F.3d 1278, 1287 (11th Cir. 1997).

14

66f F. App'x at 827 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). The test for adversity is objective; the Court may not consider a plaintiff's subjective feelings. See Doe v. Dekalb Cty. Sch. Dist., 145 F.3d 1441, 1448-49 (11th Cir. 1998). Although Plaintiff's scheduled hours were increased, it is undisputed that they were only increased by one hour, from twenty-five to twenty-six, in the week ending on September 6, 2014. (See Ex. to Pl.'s Dep., Doc. 53-5 at 22; Pl.'s Dep., at 108-114.) Additionally, Plaintiff's actual hours worked did not increase at all. No reasonable worker would be dissuaded from making or supporting a charge of discrimination because of a one hour increase in scheduled hours, especially if that worker were permitted to work fewer hours than scheduled. That is exactly what happened here. Accordingly, the alleged increase in scheduled work hours is not materially adverse.

Second, Defendant argues it never forced Plaintiff to take workers' compensation leave. Defendant cites to multiple instances in Plaintiff's deposition where she states that it was her doctor who "took her out of work" and that Defendant never forced her to take leave. (See Pl.'s Dep., at 147-48; 154-55; 160.) Plaintiff responds that she was never explicitly asked, but by not providing a stool with back support Defendant forced her to take leave. (See id. at 160-61.) She also says that the doctor who ordered her leave was not her private physician, but a workers'

15

compensation doctor in some way related to Defendant, making Defendant responsible for the doctor's actions. Only a plaintiff's employer can be liable under the ADA, and Plaintiff's Doctor is not her employer. See Garrison 664 F. App'x at 827 ("[t]he ADA . . . prohibit[s] employers from retaliating against an employee . . . ."); Pasqualetti v. Unified Gov't, No. 3:13-cv-13, 2015 WL 5722798, at *14 (M.D. Ga. Sept. 29, 2015); cf. Brown v. Milwaukee Bd. of Sch. Dirs., 855 F.3d 818, 828 (7th Cir. 2017) (no ADA liability when defendant acted on restrictions imposed by plaintiff's doctor); Cannon v. Levi Strauss & Co., 29 F. App'x 331, 336 (6th Cir. 2002) (no ADA liability when defendant "followed the specific recommendations of [plaintiff's] treating physician, the course the Supreme Court says is the correct one") (citing Toyota Motor Mfg., Ky., Inc. v. Williams, 122 S. Ct. 681, 691 (2002) *superseded by statute*, ADA Amendment Act of 2008, Pub. L. No. 110-325). It is undisputed that Defendant never told Plaintiff to go on leave. Only her doctor said so. Thus, Plaintiff did not suffer a materially adverse action.

Third, Defendant argues that Plaintiff's claim that she was retaliated against because Defendant denied her request for a stool is an improper attempt to "repackage" her failure-to-accommodate discrimination claim. See Pagonakis v. Express LLC, 315 F. App'x 425, 431 (3rd Cir. 2009) (a failure-to-accommodate theory "cannot be characterized as a retaliation claim under the ADA. The claim

16

is a direct discrimination claim based on alleged failures to fulfill the affirmative duties prescribed by the ADA.") (citing U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 396 (2002) (interpreting the ADA's discrimination provision, 42 U.S.C. § 12112(b)(5)(A), as including failures to accommodate)). Plaintiff does not address this argument at all and the Third Circuit's reasoning in Pagonakis is convincing: the ADA considers a failure-to-accommodate claim a claim for discrimination and not retaliation. Thus, Plaintiff's failure-to-accommodate claim cannot support her claim of retaliation.

Fourth, Defendant argues that a threat of termination is not a materially adverse action. "The reprimand of an employee does not constitute an adverse employment action when the employee suffers no tangible harm as a result." Summerlin v. M&H Valve Co., 167 F. App'x 93, 97 (11th Cir. 2006) (citing Pennington v. City of Huntsville, 261 F.3d 1262, 1267 (11th Cir. 2001). Likewise, a threat of termination that does not cause an objective change in the plaintiff's employment is not an adverse action. See Bozeman v. Per-Se Techs., Inc., 456 F. Supp. 2d 1282, 1360 (N.D. Ga. Oct. 16, 2006) (citing Van Der Meulen v. Brinker Int'l, 153 F. App'x 649, 655 (11th Cir. 2005)). In this case, Defendant advised Plaintiff that if she did not show up for her shifts she would be terminated. (Pl.'s Dep., at 107). But Defendant neither terminated Plaintiff nor disciplined her; that is, Plaintiff

suffered no tangible harm. (Pl.'s Dep., at 77-78; 105-106; 159). Considered objectively, no reasonable employee could feel that an inconsequential admonition was a materially adverse action.

Fifth and finally, Defendant argues that Plaintiff was not subjected to a retaliatorily hostile work environment. Plaintiff must show that the actions complained of "were sufficiently severe or pervasive to alter the terms and conditions of employment." Gowski v. Peake, 682 F.3d 1299, 1312 (11th Cir. 2012). In so evaluating, the Court considers: (1) the frequency of the conduct; (2) its severity; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. See id. Plaintiff stated that another employee told her "watch out, you're going to get fired" after her injury. (Pl.'s Dep., 176-77.) Otherwise, she was unaware of any derogatory or offensive comments about people with disabilities. (See id.) Defendant shows through text messages that Plaintiff's managers were supportive and kind to her. (See generally Doc. 53-4.) Regardless, "[d]iscrete acts cannot alone form the *basis* of a hostile work environment claim[,] . . . [which] addresses acts different in kind whose very nature involves repeated conduct, such as discriminatory intimidation, ridicule, and insult." Gowski, 682 F.3d at 1312-13 (emphasis in original) (quotation omitted). Although a series of separate acts can create a hostile

18

work environment, the one instance Plaintiff noted was isolated, and therefore, this allegation does not constitute a materially adverse action.

In conclusion, Plaintiff is unable to show that she suffered a materially adverse action to support a prima facie case of retaliation. Defendant is therefore entitled to summary judgment on Plaintiff's retaliation claim under the ADA.

## V. CONCLUSION

Upon the foregoing, Defendant's motion for summary judgment (doc. 53) is **GRANTED**. Because granting Defendant's motion disposes of all claims, Plaintiff's motion for summary judgment (doc. 28) is **DENIED**. The Clerk is **DIRECTED** to **CLOSE** this case, **TERMINATE** all outstanding motions and deadlines, and **ENTER JUDGMENT** for Defendant.

**ORDER ENTERED** at Augusta, Georgia, this 30th day of January, 2020.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA